McLAUGHLIN, Respondent, v. WINSTON, Appellant. (Supreme Court, Appellate Division, Fourth Department. March 26, 1898.) Action by Charles H. McLaughlin against Sarah R. Winston. No opinion. Order reversed, with $10 costs and disbursements, and motion granted, with $10 costs to abide the event.

McMAHON, Respondent, v. SCHMIDT, Appellant. (Supreme Court, Appellate Division, Fourth Department. March 26, 1898.) Action by Thomas F. McMahon against John L. Schmidt. No opinion. Judgment and order affirmed, with costs.

McLEAN, Respondent, v. RYAN, Appellant. (Supreme Court, Appellate Division, Second Department. March 22, 1898.) Action by Arthur A. McLean against Dennis Ryan. No opinion. Order reversed, and motion granted, upon the defendant, within 30 days, paying the plaintiff $10 costs, and executing and delivering to him a bond, with sufficient sureties to justify on notice, and to be approved by a justice of the supreme court, in the sum of $5,000, conditioned for the payment of any judgment that plaintiff may recover in this action; the judgment and the proceedings thereunder, both in this state and in Minnesota, to stand as security until the final determination of the action. In default of the defendant's furnishing such bond, order appealed from affirmed, with $10 costs and disbursements.

McMAHON, Respondent, v. LAKE SHORE & M. S. RY. CO., Appellant. (Supreme Court, Appellate Division, Fourth Department. March 26, 1898.) Action by Mary McMahon, as administratrix, etc., against the Lake Shore & Michigan Southern Railway Company. No opinion. Judgment and order affirmed, with costs.

McNEIL, Appellant, v. RAINBOW, Respondent. (Supreme Court, Appellate Division, Third Department. May 4, 1898.) Action by Fred D. McNeil against Amos L. Rainbow. John P. Kellas, for appellant. J. B. Kline, for respondent.

LANDON, J. The plaintiff sued to recover $75.65 for services rendered to defendant and expenses incurred, both at defendant's request. The defendant lived in Syracuse, owned two forest lots, 65 and 66, in Franklin county. The Santa Clara Company had, as trespassers, cut down the timber upon the lots, and carried it away, and obliterated the lot lines. The plaintiff lived near the lots, and wrote to the defendant about buying them, and defendant answered that he was willing to sell. September 21, 1895, plaintiff wrote defendant: "I will make you an offer on your lot 66. I will collect you $10 per acre [meaning of the Santa Clara Company] if you will let me have the lot." September 25, 1895, defendant wrote to plaintiff: "I will take your offer of $10 per acre if you take the two lots 65 and 66." September 30, 1895, defendant wrote: "I have concluded myself to have you proceed and get my land surveyed, locating lots 65 and 66 soon as possible, and then the property will be in position for you to take and collect damages of the Lumber Co. I wish to have you hurry up the survey before it freezes up or snow gets too deep." Plaintiff did not answer this letter. This is the letter he relies upon. October 1st, before he received defendant's letter of September 30th, he answered the letter of September 25th, to the effect that there was a sportsman who wanted lot 66, and plaintiff would collect $10 if defendant would give him the land, and all he could get over $10 per acre. October 5, 1895, defendant answered plaintiff's letter of October 1st, saying: "You can have it, but I want you to take the whole amount, lots 65 and 66, the 72 acres, and you can have it by collecting me $10 per acre, and all you can get over and above that you can have for your trouble. * * * You said it would not cost me anything." October 9th plaintiff writes the defendant: "Lot 66 is a very good lot, and I think I can get out of it at $10 per acre; but I think, if you had come up and saw 65, you would have let me had it for $6 per acre;" and then he speaks of arranging with his attorney to collect the damage, and pay the amount to defendant. He does not agree to take 65. Defendant did not reply. November 21st, plaintiff writes to defendant: "I am investigating said property 65 and 66, and, as soon as I complete the survey and get the corner set, I will let you know and have your money ready for you; and, if I will forward your money or said amount to your bank, will you deliver me a deed to the bank?" December 3d defendant wrote to plaintiff: "I wish to have the deal closed by Thursday, as I am going away. If you cannot close the deal and send me the money by that time, it will be no use to bother with it any longer. We shall have to declare the deal off." The defendant sold the lots to the Santa Clara Company the 14th December. Plaintiff did not tender defendant the money. There are other letters, but they do not vary the above. This action is to recover plaintiff's expenses in surveying the lots and services in connection therewith, which he incurred and rendered in October, 1895. The parties never met each other. Whether there was any completed contract between the parties was a question of fact upon the letters. I cannot see that their minds met upon anything. The plaintiff was willing to take lot 66. The defendant wanted to sell both lots. The plaintiff evidently went ahead to see if he could get $10 per acre out of lot 65, but he certainly never agreed to pay it if he should not get it. He never pretended that he was surveying at the defendant's charge, or that he was willing to do so. Probably what the plaintiff did led the Santa Clara Company to buy the lots, but, as the defendant had no certain contract with the plaintiff, he violated none. I advise affirmance without opinion.